IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2847 T
(Judge Allegra)

H.J. HEINZ COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# JOINT STATUS REPORT

As the Court requested in its Order of July 5, 2005, the parties present this joint status report. This document will be filed electronically.

A. Suggested Trial Date

Both parties' witnesses are able to appear at a trial to be held at some time between December 14-23, 2005. (The parties still anticipate a three-day trial.) The plaintiff would prefer a trial in February of 2006, but the defendant's expert witness could have scheduling difficulties then. A trial during the first week of January, 2006, is an alternative to a trial between December 14-23, 2005.

B. Discovery

1. Defendant's Position. In paragraph 1 of its July 5 order, the Court required the defendant to complete discovery by September 2, 2005, on an issue discussed during a telephonic conference held on July 1, 2005. The Court permitted the extra discovery because Heinz had

stated in response to an interrogatory that it had always owned 100% of the stock of Heinz Credit Company (Credit), a subsidiary that was directly involved in the transaction at the heart of this case. After discovery closed, Heinz stated that it had owned only .1% of Credit during the period at issue; another subsidiary, Heinz Leasing Company (Leasing), owned the remaining 99.9%. After receiving the July 5 Order, the defendant served a request for production of documents, to which the plaintiff responded. The defendant also noticed a deposition of the plaintiff under RCFC 30(b)(6). To accommodate the witness, the parties agreed to hold the deposition on September 7, and they jointly left a message with chambers to alert the Court to this variation of the schedule. The defendant also agreed to respond to the plaintiff's most recent contention interrogatories after the deposition in order to take account of newly-discovered facts; it will respond on or before September 19, within the period allowed after service by mail.

During the September 7 deposition, the defendant's attorney asked the witness if a memorandum written by a Heinz employee accurately summarized a series of transactions by which Heinz reorganized Credit and Leasing ("Project Turbo"). The memorandum purported to be such a summary. The plaintiff's attorney instructed the witness to answer the question only to the extent that it dealt explicitly with Leasing. Just one paragraph of the document mentions Leasing by name, and the plaintiff's attorney did not object to questions about that paragraph. The defendant's attorney stated that the entire memorandum related to the fate of Leasing because Heinz soon merged Leasing into Credit. The transaction discussed in the memorandum removed an impediment to the merger, as the witness testified. After the merger, Heinz owned 100% of Credit.

Because the parties could not resolve this dispute, though they discussed their positions at length, they attempted to reach the Court, but could not. The parties then agreed to mention the dispute in this status report and to ask the Court to schedule a conference call to resolve it.

2. Plaintiff's Position. Regular discovery in this case, which lasted for more than 14 months, ended on May 20, 2005. The Court's order of July 5, 2005 specified that "[o]n or before September 2, 2005, the defendant shall complete discovery of the issue discussed at the conference." The issue was the ownership by Heinz Leasing Company ("HLC") of the stock of Heinz Credit Company ("HCC"). During defendant's September 7, 2005 deposition of John C. Crowe, Heinz's designated representative, defendant's counsel asked Mr. Crowe whether an internal company memorandum dated March 29, 1995, which plaintiff had provided to defendant on January 12, 2005, "represented an accurate description of Project Turbo." Plaintiff's counsel objected to the question because virtually all of the memorandum deals with corporations other than HLC and subjects other than HLC's ownership of HCC stock. The only reference to HLC in the 77-line memorandum is a 2-line description of a dividend paid by HCC to HLC. Plaintiff's counsel did not object to defendant's counsel's interrogating Mr. Crowe about the dividend or anything else pertaining to HLC. Had defendant's counsel asked Mr. Crowe whether the memorandum represented an accurate description of Project Turbo *to the extent it involved HLC*, there would have been no objection—and Mr. Crowe's answer would have been "yes, it does." However, defendant's counsel's question, which was not withdrawn or re-phrased, went well beyond what plaintiff believes the Court authorized. Furthermore, defendant had ample opportunity to inquire about the memorandum during the more than 4 months that elapsed

between its receipt by defendant and the close of regular discovery—and to inquire about anything else during the 14-month regular discovery period that ended on May 20.

The plaintiff's attorney has stated that the defendant's trial attorney may present this status report as a joint filing.

Respectfully submitted,

s/Robert Stoddart
ROBERT STODDART
U.S. Department of Justice (TAX)
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 307-6445
FAX: (202) 514-9440
Robert.C.Stoddart@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief, Court of Federal Claims Section

Of Counsel

September 9, 2005