IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 03-2847 T
(Judge Allegra)

H.J. HEINZ COMPANY AND SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO AND MOTION TO EXCLUDE CERTAIN OF DEFENDANT'S TRIAL EXHIBITS

---

On October 28, 2005, the plaintiff filed a pleading captioned "Plaintiff's Objections to and Motion to Exclude Certain of Defendant's Trial Exhibits" (hereinafter Plaintiff's Motion). The defendant responds as required by RCFC 7.1(a).

The plaintiff objects to eleven documents or groups of documents that the defendant listed as possible trial exhibits during the meeting of counsel required by RCFC App. A, ¶ 13. The plaintiff fails to attach the exhibits to its motion. The plaintiff prefaces the motion with a general discussion of each of the four types of documents it finds objectionable, but it devotes less than a sentence to each type. And it devotes less than a clause to each specific exhibit–in fact, the most elaborate objection comprises only five words: "Not properly authenticated, irrelevant, hearsay." Plaintiff's Motion at 2. Nevertheless, the plaintiff "moves that the documents, or portions of documents, to which it objects be excluded from evidence." Id. at 3. The plaintiff demands relief that it has done little to explain and less to justify.

A. The plaintiff's general objection to what it calls irrelevant documents

The plaintiff objects generally to "(1) draft documents . . . on the grounds of irrelevancy (Fed. R. Evid. 402) and violation of the best evidence rule (Fed. R. Evid. 1002) . . . ." Plaintiff's Motion at 1. The defendant's exhibits may well be irrelevant to the plaintiff's theory of the case, but they directly support the defendant's theory. Their relevance will appear when the defendant explains its theory in its memorandum of contentions of fact and law, now due on November 28, 2005. Furthermore, the defendant cannot understand why the best evidence rule excludes drafts. The rule (Fed. R. Evid. 1002) provides:

> Rule 1002. Requirement of Original
>
> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

Under most circumstances Rule 1003 treats duplicates as originals, and the defendant's exhibits are duplicates.

If the defendant wishes to prove the contents of a draft, the draft is the best evidence of its contents. A draft is relevant if used to show when the drafter began to consider its contents, and that is one reason the defendant will offer drafts as evidence in this case.

2. The plaintiff's general objection to what it calls unauthenticated documents

The plaintiff objects to "(2) documents which Plaintiff cannot adequately identify to which Plaintiff objects for lack of authentication (Fed. R. Ev. 901) . . . ." This objection might be understandable in the abstract, but the plaintiff raises it against documents that it produced from its own records during discovery. Heinz usually identified the documents in a written response to the defendant's request for production. Heinz's designated representative identified others

during depositions. The defendant itself will not authenticate any challenged document in this response, but it promises that it will authenticate all of them at trial, either through testimony or by information revealed in the document itself, which will support a finding that the document is what it purports to be. See Fed. R. Evid. 901(a) & (b)(4).

3. The plaintiff's objection to evidence of events occurring after 1998

The plaintiff objects to: "(3) documents pertaining to events occurring after 1998 to which Plaintiff objects on the ground of irrelevancy . . . ." This objection repeats objection (1), and the defendant incorporates its earlier response; but because the objection specifies the ground on which the plaintiff finds the documents irrelevant, the defendant offers a specific explanation.

At the heart of the transaction before the Court lies a purported sale. Heinz claims to have bought 3,325,000 shares of its stock from a subsidiary, HCC, using a note that was convertible, after three years, into 3,510,000 shares of its stock. Heinz says it bought the stock from HCC because it wanted more shares in its treasury to cover stock options and to reduce dividend payments. The defendant will argue that the sale was a sham because, as of the date of the sale, HCC (1) operated under directives that required it to declare a dividend and return to its shareholders any cash on hand not needed for its business operations; and (2) HCC had abandoned its business operations because of pressing state-tax considerations. HCC's ultimate owner was Heinz. Consequently, if HCC held the note to maturity and collected cash, it would have had to return the cash to Heinz, and the sale would have been undone in an obvious manner. As of the date of sale, HCC had no real choice but to convert the note to stock, more stock than HCC sold. In fact, HCC did convert the note to stock, and Heinz's treasury lost a net 185,000 shares–a result that was predictable from the beginning.

If Heinz argues that HCC could have retained the cash it would have received at the note's maturity despite HCC's corporate guidelines, events after 1998 will rebut Heinz's argument. The note was to mature on January 18, 2002. From the time HCC accepted the note until the end of January, 2002, HCC received $1,837,034,292 in dividends from all sources (including the dividends on the Heinz stock HCC obtained by converting the note). That amount is nearly ten times what the note would have paid. During the same period, HCC itself paid $2,597,109,587 as dividends to its shareholders. All those dividends flowed to Heinz, including the dividends that Heinz paid to HCC. Cash from the note would have flowed in the same circle, from Heinz to HCC to Heinz.

Events after 1998 demonstrate that HCC strictly followed policies in place on January 18, 1995–the date of the sale. The defendant will show what the policies were by proving facts that existed on January 18, 1995. Later events will rebut any contention that HCC could have ignored its policies.

4. The plaintiff's objection to evidence concerning Heinz Leasing Company

Finally, the plaintiff objects to: "(4) safe harbor leases and other business transactions to which Heinz Leasing Company was a party to which Plaintiff objects on the ground of irrelevancy." Plaintiff's Motion at 2. This objection also repeats objection (1), and the defendant again incorporates its response to that objection. It would require several pages to explain the relevance of these documents in detail. In this response the defendant will merely summarize its argument.

Heinz Leasing Company was HCC's major shareholder at the date of the sale and for a short while afterwards. Both HCC and Heinz Leasing Company were Delaware holding

companies through which Heinz sheltered income from state taxation. Heinz was eager to keep HCC from acquiring any nexus with a state that could assert power to tax HCC's income; and safe harbor leases gave Heinz Leasing Company nominal ownership of property in several such states. For that reason Heinz refrained from merging HCC into Heinz Leasing Company, even though Heinz had long desired such a merger.

Shortly before the 1995 stock "sale," HCC resolved to abandon the business operations through which it had sheltered so much income from state taxation. It also abandoned its Delaware holding company status and moved to Idaho. Shortly after the sale, Heinz Leasing Company merged into HCC, bringing with it all of the taxable links with states that might have asserted a claim against HCC.

The defendant expects Heinz to argue that–as of January 18, 1995–HCC might have considered reviving its abandoned business operations so as to have a use for cash generated by the note. The defendant will rebut the argument by showing that: (1) Heinz had long wanted to merge Heinz Leasing Company with HCC; (2) HCC's business operations prevented the merger; (3) during a single meeting, HCC's board of directors resolved both to abandon HCC's business operations and to accept the note in exchange for Heinz stock; (4) HCC's merger with Heinz Leasing Company became possible and took place only because HCC abandoned its potentially-taxable business operations; and (5) the merger gave HCC a taxable nexus with many states (including Pennsylvania) whose potential tax claims were the reason why HCC abandoned its business in the first place. HCC could not have revived its business without reviving–and worsening–its state-tax difficulties, as Heinz's designated spokesman will admit. Therefore,

HCC would have had no use for the cash it would have received had it held the note to maturity. It would have been obliged to return the money to Heinz.

It follows that the plaintiff cannot object to the relevance of Heinz Leasing Company's safe harbor leases.

5. The plaintiff's other objections

The plaintiff objects that certain specific exhibits contain hearsay (exhibits 17, 72, and the first paragraph of exhibit 113). Somewhat inconsistently, the plaintiff also concedes that the defendant might offer the exhibits for some purpose other than to prove the truth of what they assert. See Plaintiff's Motion at 2, n.1. Nevertheless, the plaintiff asks the Court to exclude the exhibits before trial.

In fact the defendant will not offer exhibit 17 (a bill sent to HCC) to show that the amount billed was correct; it will offer the exhibit to show that HCC was charged large amounts (correctly or not) because of its role in Heinz's stock-repurchase plan. The defendant will offer exhibit 72 to show what a Heinz tax attorney considered while he helped to plan HCC's withdrawal from its business. The defendant does not care if the attorney's ideas were true or false (in fact, those categories do not apply to plans); at the moment, the defendant cares only that Heinz's tax attorney had and recorded certain ideas while doing his job. But the exhibit is not hearsay in any event. See Fed. R. Evid. 801(d)(2)(D). Finally, the defendant offers exhibit 113 to show how Heinz accounted for the stock it purchased from HCC. The first paragraph repeats some advice that Heinz received from its stock transfer agent. Again, the defendant does not care whether the advice was true or false; the defendant cares that Heinz received it. The hearsay objections have no merit.

WHEREFORE the defendant asks the Court to deny the plaintiff's motion to exclude certain of the defendant's trial exhibits.

Respectfully submitted,

s/Robert Stoddart
ROBERT STODDART
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Tel.: (202) 307-6445
FAX: (202) 514-9440
E-MAIL: Robert.C.Stoddart@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section

Of Counsel

November 14, 2005