No. 03-2847 T
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

H.J. HEINZ COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION *IN LIMINE*

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
ROBERT STODDART
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

[Electronically filed on November 14, 2005]

## TABLE OF CONTENTS

Page

I. Background . . . . . . . . . . 1

II. Argument . . . . . . . . . . 3

A. Aiden Hatton may not offer the Darivoff letter as his own testimony by adopting its reasoning and conclusions . . . . . . . . . . 3

B. Aiden Hatton has no learning or experience that qualify him to value a security not traded on a public exchange. Furthermore, his "method" is unreliable and leads to results that contradict his conclusions. . . . . . . . . . . 7

C. Heinz may not shield Philip Darivoff from the requirements of expert discovery and then use his testimony to support an opinion on the Note's value . . . . . . . . . . 12

III. Conclusion . . . . . . . . . . 16

## TABLE OF CONTENTS FOR APPENDIX TO DEFENDANT'S MOTION IN LIMINE

Declaration of Robert Stoddart . . . . . . . . . . 1

| Exhibit | Description |
| --- | --- |
| 1 | Letter from Goldman, Sachs & Co. to H.J. Heinz Credit Co. (Aug. 24, 1994) . . . . . . . . . . 4 |
| 2 | Letter from John C. Crowe to P. Darivoff, with attachment (July 5, 1994) . . . . . . . . . . 8 |
| 3 | Excerpts from Plaintiff's First Request for Admissions (May 14, 2004) . . . . . . . . . . 10 |
| 4 | Excerpts from Defendant's Responses to Plaintiff's First Request for Admissions (June 10, 2004) . . . . . . . . . . 13 |
| 5 | Letter from Clifton B. Cates, III, to Robert Stoddart (Dec. 9, 2004) . . . . . . . . . . 16 |

[Table of Contents for Appendix to Defendant's Motion in Limine, continued]


| Exhibit | Description | Page |
|---|---|---|
| 6 | E-mail from Robert C. Stoddart to C.B. Cates (Jan. 13, 2005) responding to attached e-mail from C.B. Cates to Robert C. Stoddart (Jan. 11, 2005) | 19 |
| 7 | Plaintiff's Disclosure of Expert Testimony (Feb. 4. 2005) | 20 |
| 8 | Expert Report of Aiden E. Hatton, Jr. (Feb. 4. 2005) with exhibits | 22 |
| 8A | Exhibit to 8, supra: Letter from Philip M. Darivoff to H.J. Heinz Credit Co. (Jan. 16, 1995) (the "Darivoff letter") | 27 |
| 8B | Exhibit to 8, supra: Letter from Philip M. Darivoff to James A. Backo (Mar. 4, 1998) | 35 |
| 8C | Exhibit to 8, supra: Charts produced by Bloomberg, L.P. | 42 |
| 8D | Exhibit to 8, supra: Excerpts from H.J. Heinz Co. Zero-Coupon Convertible Note due January 18, 2002 | 46 |
| 9 | Spreadsheet, which was originally Exhibit 3 of the deposition of Aiden Hatton, Jr. (Mar. 23, 2005), excerpts of which constitute Exhibit 10 of this declaration | 48 |
| 10 | Excerpts from the deposition of Aiden Hatton, Jr. (Mar. 23, 2005) | 49 |
| 11 | Excerpts from the deposition of Philip M. Darivoff (Apr. 6, 2005) | 109 |


## TABLE OF AUTHORITIES

Cases:


Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) . . . 9, 11
Henry v. Champlain Enters., Inc., 288 F. Supp. 2d 202 (N.D. N.Y. 2003) . . . 8
Kumho Tire Co., Ltd., v. Carmichael, 526 U.S. 137 (1999) . . . 9
Lord v. Fairway Elec. Corp., 223 F. Supp. 2d 1270 (M.D. Fla. 2002) . . . 8
Paddack v. Dave Christensen, Inc., 745 F.2d 1254 (9th Cir. 1984) . . . 4
United States v. Dukagjini, 326 F.3d 45 (2d Cir. 2003) . . . 4

[Table of Authorities, continued]

Page

Miscellaneous:

Fed. R. Civ. P. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Fed. R. Civ. P. 45 advisory committee's note to 1991 amendments, subsection (c) . . . . 14
Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Fed. R. Evid. 701 advisory committee's note to 2000 amendments . . . . . . . . . . . . . . . . 15
Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15
Fed. R. Evid. 702 advisory committee's note to 2000 amendments . . . . . . . . . . . . . . . . . 9
Fed. R. Evid. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
RCFC 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13-14
RCFC 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2847 T
(Judge Allegra)

H.J. HEINZ COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION *IN LIMINE*

Pursuant to RCFC App. A, ¶ 14(b) and the Court's Order of October 17, 2005, the United States, defendant, asks the Court:

(A) to preclude Heinz's designated expert witness from offering the earlier technical opinions of a designated fact witness as evidence of their truth;

(B) to preclude Heinz's designated expert witness from opining on the value of a security, because: (1) he has neither learning nor experience to support his opinion; and (2) he applies arbitrary, subjective standards that result in contradictory results; and

(C) to preclude a designated fact witness from offering expert testimony under the pretext of giving a mere historical account of technical opinions he provided in the past.

As good cause for this motion, the defendant states the following:

I. Background

In this case, Heinz demands a $43 million refund arising from the carry-back of a capital loss it claims to have incurred in 1995. During the course of the transaction that generated the alleged loss, Heinz claims to have purchased 3,325,000 shares of its own common stock from a

subsidiary, Heinz Credit Company (HCC), by issuing a Convertible Note (the Note) on January 18, 1995. The Note had a face value of $197,402,412.78; it required no cash payment until maturity (January 18, 2002); and it could be converted into Heinz stock after January 17, 1998, at the rate of 17.7809377 shares per $1,000 of the Note's principal value at maturity (subject to possible adjustments). See Ex. 8D of the Declaration of Robert Stoddart (Stoddart Decl.), pages 46-47 of the separately submitted Appendix (App.). In other words, the Note could be converted to 3,510,000 shares (197,402.41278 x 17.7809377 = 3,510,000), which are 185,000 more shares than HCC exchanged for the Note.

In 1994, HCC hired Philip Darivoff, then a partner in Goldman, Sachs & Co., both to design the Note for Heinz (the buyer of the stock) and to provide a valuation of the Note for HCC (the seller). HCC agreed to pay $1.5 million to Goldman, Sachs for these services. See Stoddart Decl. Exs. 1 & 2, App. at 4-9. On January 16, 1995, Mr. Darivoff sent HCC his opinion of the Note's value and a summary of his analysis in a letter to James A. Backo, HCC's president (the Darivoff letter). The Darivoff letter appears in Stoddart Decl. as Ex. 8A, App. at 27-34.

On May 14, 2004, just ten days after the parties filed their joint preliminary status report, Heinz's attorney asked the defendant to agree to admit the Darivoff letter as evidence. See Stoddart Decl. Ex. 3 at 13, App. at 11 (referring to the letter as "the Goldman Sachs Opinion"). The defendant refused because the Darivoff letter is hearsay and states an opinion without a proper foundation, i.e., without a demonstration that the declarant is an expert. See Stoddart Decl. Ex. 4 at 33, App. at 14. Heinz later considered designating Philip Darivoff as an expert witness and using the Darivoff letter as an expert report (see Stoddart Decl. Ex. 5, App. at

16), but Heinz eventually decided to designate someone else as an expert and to call Mr. Darivoff as a "percipient witness" only. Heinz gave the defendant written notice of this decision on January 11, 2005. See Stoddart Decl. Ex. 6, App. at 19.

On February 4, 2005, the parties designated their expert witnesses and exchanged expert reports, as RCFC 26(a)(2) requires. See Stoddart Decl. ¶ 1, App. at 1. Heinz designated Aiden E. Hatton, Jr., as its only expert witness. See Stoddart Decl. Ex. 7, App. at 20. In his report, Mr. Hatton concludes that he agrees with the conclusions of the Darivoff letter, which he attaches as an exhibit. See Stoddart Decl. Ex. 8 and 8A, App. at 22 & 27.

In its witness list, filed on October 28, 2005, Heinz lists Aiden Hatton, Jr., as its designated expert witness, but it also lists Philip M. Darivoff, who (in Heinz's words) "may testify about . . . the value of the Convertible Note . . . ." (Emphasis added.)

## II. Argument

### A. Aiden Hatton may not offer the Darivoff letter as his own testimony by adopting its reasoning and conclusions.

In its witness list, Heinz states that Aiden Hatton "may offer opinion testimony on . . . his agreement with the conclusions of Goldman, Sachs set forth in that firm's letter of January 16, 1995 . . . ." Mr. Hatton never calculated a value for the Note himself; instead he adopted Philip Darivoff's conclusion along with his reasoning. See Stoddart Decl. Ex. 8 (Hatton's report) at 1-2, App. at 22-23. ("I also agree with Goldman's conclusion that the value of the Note on the date of issuance was approximately $130,506,000 . . . . I agree with Goldman's analysis . . ." ). But Mr. Hatton cannot transform Philip Darivoff into Heinz's expert witness by proxy. Everything in the Darivoff letter remains hearsay.

Mr. Hatton seems to rely upon Rule 703 of the Federal Rules of Evidence, which provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Mr. Hatton bases his opinion on the Darivoff letter. If Mr. Hatton is an expert, and if the Darivoff letter is of a type reasonably relied upon by experts, then Mr. Hatton's own opinion is admissible even though the letter is inadmissible hearsay and asserts an "expert opinion" rendered by a person who will not be qualified as an expert. Paradoxically, however, Mr. Hatton's admissible opinion is that he agrees with the inadmissible Darivoff letter–i.e., he opines that the Darivoff letter asserts the truth, even though it cannot be admitted to prove what it asserts. See, e.g., Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1261-62 (9th Cir. 1984).

Mr. Hatton's testimony is admissible only to the extent that it goes beyond the Darivoff letter; but when he repeats the letter's assertions, his testimony is itself hearsay. "[A]n expert witness may rely on hearsay evidence while reliably applying expertise to that hearsay evidence, but may not rely on hearsay for any other aspect of his testimony." United States v. Dukagjini, 326 F.3d 45, 58 (2d Cir. 2003) (emphasis added). Mr. Hatton has applied his expertise to the Darivoff letter very sparingly.

For example, the Darivoff letter values the Note in two ways: (1) by applying Goldman, Sachs's own convertible bond valuation model; and (2) by splitting the Note into its constituent

parts (straight debt and an option) and valuing each part separately. See Stoddart Decl. Ex. 8A at 1-2, App. at 27-28.

Mr. Hatton never checked and did not try to replicate Mr. Darivoff's valuation by using Goldman, Sachs's convertible bond valuation model. He never saw the formulas used in that model and never discussed it with Goldman, Sachs. See Stoddart Decl. Ex. 10 at 12-15, App. at 60-63.[1] Nevertheless, he agrees with its results. See id. at 12-13, App. at 60-61. He also agrees with the way Mr. Darivoff separately valued the Note's debt and equity components.

The Note bore interest of 6% compounded semi-annually, and would have paid $197,402,412.78 if held to maturity, which was seven years after the date of issuance. See Stoddart Decl. Ex. 8D, App. at 46. To value the debt portion of the Note, Mr. Darivoff calculated the amount of principal that would be needed to produce the Note's face value if the Note were a zero-coupon, subordinated straight-debt instrument. To place such a note, he believed that Heinz would have to offer interest equal to the current rate on the 10-year Treasury Note, plus a premium of .7% (70 basis points). See Stoddart Decl. Ex. 8A at 1, App. at 27. The principal of such a note would be about worth 84.1% of the convertible Note's initial value. See id. at 2, App. at 28. Mr. Darivoff considers the Note's initial value to be about $130,506,000. See id., App. at 31. Accordingly, the straight-debt portion of the Note would be worth, at issuance, about $109,756,000 ($130,506,000 x .841).

---

[1] Exhibit 10 contains excerpts from the defendant's deposition of Aiden Hatton, Jr. (3/23/05). In fairness to Mr. Hatton, the defendant attaches the entire portion of the deposition that deals with his valuation of the Note, including pages that this brief does not cite.

Mr. Hatton himself, however, offers only one personal valuation of the Note's straight-debt component: it was worth, he says, from 60% to 90% of the Note's value on the date of issuance. See Stoddart Decl. Ex. 10 at 16, App. at 64.

To value the equity option portion of the Note, the Darivoff letter generally relied on the Goldman, Sachs convertible bond valuation model, because exercising the option could result in so many possible consequences. See Stoddart Decl. Ex. 8A at 2, App. at 28. But Mr. Darivoff also estimated the option's value by separately considering two of those possibilities: (1) the holder converts after seven years when Heinz stock sells for $56.36 per share; and (2) the holder converts after three years, and the accreted value of the Note equals the price of the stock. Under the first assumption, the option is worth 14.6% of the Note's initial value; under the second, it is worth 16.9%. See ibid., App. at 28. Though Mr. Hatton endorses the result of Goldman, Sachs's option-valuation methodologies, he does not attempt to replicate them. Instead, he decides from his experience–and from nothing but his experience–that the equity component of the Note was worth from 10% to 40% of the Note's total value at issuance. See Stoddart Decl. Ex. 10 at 18, 27-30, App. at 66, 75-78.

At the end of his letter, Philip Darivoff concluded that the straight-debt component of the Note was worth 84.1% of its initial value, which leaves a residual value of 15.9% for the option. See Stoddart Decl. Ex. 8A, App. at 31. By contrast, Mr. Hatton's experience permits a range of 60% to 90% for the straight-debt portion and range of 10% to 40% for the option. If he is permitted to testify, his admissible testimony will be those ranges; but the specific values of 84.1% and 15.9% are hearsay and will remain hearsay because Mr. Hatton's "experience" permits an almost infinite number of valuations within the ranges he assumes. Nothing in Mr.

Hatton's work supports Goldman, Sachs's dollar valuation of the entire Note–$130,506,000. He never calculates a dollar value on his own.

As this brief survey shows, Mr. Hatton "applies his expertise" to the Darivoff letter simply to endorse its conclusions. He does not reach those conclusions on his own because he never had Goldman, Sachs's convertible bond valuation model and he never replicated Goldman, Sachs's separate valuation of the Note's debt and equity portions. The Darivoff letter can be cited only to show that Mr. Hatton agrees with something inadmissible.[2] It is not admissible to show the value of the Note, no matter how hearty Mr. Hatton's agreement may be. Parroted hearsay is still hearsay.

B. Aiden Hatton has no learning or experience that qualify him to value a security not traded on a public exchange. Furthermore, his "method" is unreliable and leads to results that contradict his conclusions.

Aiden Hatton has taken no courses on the valuation of securities, has attended no seminars on the subject, and knows of no authoritative publications. Before he was engaged in this case, no one had ever asked for his opinion about the value of a security. See Stoddart Decl.

---

[2] Mr. Hatton also adopts the reasoning of a second letter written by Philip Darivoff, a letter from Goldman, Sachs to HCC, dated March 4, 1998. See Stoddart Decl. Ex. 8 at 2, App. at 23 (referring to Ex. 8B, App. at 35). In his 1998 letter, Mr. Darivoff generally concludes that current market conditions favor conversion of the Note to Heinz stock. The 1998 letter is also hearsay, and so is any portion of Mr. Hatton's testimony that repeats it. But Mr. Hatton uses the 1998 letter to support an opinion that is beside the point.

At trial the defendant will show that HCC was likely to convert the Note to stock as of the date the Note was issued–January 18, 1995–because of state-tax considerations and corporate policies in effect on January 18, 1995. The Note was convertible, after three years, into 185,000 more Heinz shares than HCC was selling. Accordingly, the defendant concludes that the sale was a sham–in 1995. To rebut this argument, Mr. Hatton opines that the 1998 price of Heinz stock made conversion reasonable, and he insists that no one could have foreseen 1998's "unprecedented" market conditions in 1995. See Stoddart Decl. Ex. 8 at 2, App. at 23. His statement is probably true, but it is certainly irrelevant.

Ex. 10 at 6-8, App. at 54-56. In particular, he has no experience valuing securities that are not traded on an established market. Id., Ex. 10 at 7, App. at 55. Nevertheless, he offers this Court his opinion on the value of the Note, a security not traded on an established market. He claims to rely upon his experience, which he characterizes in these words:

> My qualification for this assignment is a career of close to fifty years in the investment industry, twenty years as an institutional salesman and sales manager for several large Wall Street firms, and since 1978 as a money manager for large pension funds, both public and private; profit sharing plans; mutual funds; foundations; and other large pools of money.

Stoddart Decl. Ex. 8 at 1, App. at 22.

If Mr. Hatton had ever valued a security–just once in his fifty years in the industry–the defendant might hesitate to request exclusion of his testimony because he lacks qualifications. See, e.g., Henry v. Champlain Enters., Inc., 288 F. Supp. 2d 202, 220 (N.D. N.Y. 2003) (although he had minimal experience valuing stock for ESOPs and no training in the area, a banker could offer an opinion on the value of convertible preferred stock purchased by an ESOP because he had prepared several stock valuations and had assisted in preparing others, sometimes for ESOPs). Mr. Hatton, however, lacks any experience in valuing securities and has trouble explaining how his actual experience prepared him to do for this Court what he has never attempted to do for anyone else in a long and busy career. See Stoddart Decl. Ex. 10 at 9-10, App. at 57-58. His experience cannot qualify him as an expert on a matter that is outside his experience. See, e.g., Lord v. Fairway Elec. Corp., 223 F. Supp. 2d 1270, 1281 (M.D. Fla. 2002) (electrical engineer could not give an opinion based on his experience, which did not include the question at issue). But even if Mr. Hatton were qualified to render an opinion on a subject he has

never studied and with which he has never dealt, his methods and reasoning would require the Court to exclude his testimony.

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" Kumho Tire Co., Ltd., v. Carmichael, 526 U.S. 137, 147 (1999) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)). The trial judge's "gatekeeping" obligation also applies to "technical, or other specialized knowledge" even if the field is not strictly scientific. See Kumho, 526 U.S. at 147.

Daubert sets out a non-exclusive list of factors a court may consider to determine whether expert testimony is reliable (see 509 U.S. at 593-94). One factor is "whether the expert's technique or theory can be or has been tested–that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. Mr. Hatton's conclusions rely upon nothing but a subjective, conclusory application of his "experience," as a few examples will demonstrate.

Mr. Hatton explained in the following words how he determined that the equity portion of the Note was worth from 10% to 40% of its initial value:

A. I calculated from my – my personal experience. The H.J. Heinz is a low volatility stock. Therefore, whatever – whatever equity component, whatever option is there is worth less than 50 percent.

So I just *arbitrarily* determined that it is in a range – worth – in a range of 10 to 40 percent, but I just base that on my experience for being in the business for a long period of time

Q Did you base it on anything except that experience?

A Well, no. I based it on my – my own personal experience.

Stoddart Decl. Ex. 10 at 18, App. at 66 (emphasis added).

The word *arbitrarily* was not a slip of the tongue. Later in the deposition, Mr. Hatton returned to the same subject:

[Q] How did you calculate that the option would be from 40 percent to 10 percent of the value of the note on the date of issuance?

A I relied on Goldman, Sachs' study and their analysis, and I concluded by using my own experience in looking at convertible securities and determined that the equity component for a low volatile stock like H.J. Heinz would be less than 50 percent.

And in this situation, I checked the volatility. They suggest 19 percent. I checked the volatility myself, and I would agree with them that 19 percent was the volatility that's a very low volatile stock and, therefore, the option would be less than 50 percent. And I just *arbitrarily* determined that it was in the range of 10 to 40 percent.

If 60 to 90 percent of the – of the – of the security is fixed income, then clearly, you know, 10 percent, at least 10 percent has to be equity.

Q So, did you choose the range of 10 percent to 40 percent [for] the option because you already had a range of 60 to 90 for the debt?

A Basically.

Stoddart Decl. Ex. 10 at 27-29, App. at 75-77 (emphasis added).

If Aiden Hatton's experience leads him to select a range of values *arbitrarily*, his method is subjective and conclusory on its face. Nevertheless, the defendant attempted to test Mr. Hatton's method as if it were testable, as Daubert recommends. See Daubert, 509 U.S. at 593.

According to Mr. Hatton, the fixed-income component of the Note was worth from 60% to 90% of its value on the date it was issued. The Darivoff letter states that the entire Note was worth about $130,506,000 on that date. See Stoddart Decl. Ex. 8A, App. at 31. Consequently, Mr. Hatton believes that the fixed-income component was worth between $78 million and $117 million. His experience, and nothing but his experience, is the "method" that underlies this belief. See Stoddart Decl. Ex. 10 at 18, App. at 66.

The Note was supposed to pay about $197,402,000 if held to maturity, seven years after issuance. See Stoddart Decl. Ex. 8D, App. at 46. To yield $197,402,000 in seven years, a straight-debt instrument with an initial value of $78 million would have to yield about 13.65% compounded semiannually. See Stoddart Decl. Ex. 10 at 19-20, App. at 67-68; Ex. 9, App. at 48.

Philip Darivoff considered the value of the convertible Note's fixed-income component to be equal to the initial value of a zero-coupon straight-debt instrument yielding the market rate and paying the Note's face value in seven years. He assumed that Heinz could place such a zero-coupon, non-convertible note by offering an interest rate of 8.57%–which is .7% (70 basis points) over the relevant U.S. Treasury benchmark. See Stoddart Decl. Ex. 8A, App. at 27, 31. Mr. Hatton agrees with Mr. Darivoff's valuation and reasoning.

Here Mr. Hatton's method collides with itself. His experience tells him that the fixed-income portion of the Note could have been worth as little as $78 million, but a straight-debt instrument with an initial value of $78 million would have to yield about 13.65% to produce the Note's face value in seven years. That is more than 500 basis points over the Treasury benchmark, and Mr. Hatton's experience tells him that this would have been an unreasonable premium for Heinz to pay. See Stoddart Decl. Ex. 10 at 26, App. at 74. Mr. Hatton's method cannot coexist with Mr. Darivoff's method, which Mr. Hatton endorses. The Court should not admit the testimony of a proffered expert who lacks relevant learning or experience and who applies a subjective, conclusory method that generates contradictions.

C. Heinz may not shield Philip Darivoff from the requirements of expert discovery and then use his testimony to support an opinion on the Note's value.

Heinz had a chance to designate Philip Darivoff as its expert witness. It chose to call him as a fact witness instead. This choice has limited the scope of the defendant's discovery. For example, Heinz never disclosed about Mr. Darivoff the information that RCFC 26(a)(2) requires parties to disclose about an expert witness, such as "the compensation to be paid for [his] study and testimony." To this day, the defendant does not know if Heinz is paying Mr. Darivoff for work he may do during the present litigation. The defendant knows only that Heinz/HCC paid Goldman, Sachs $1.5 million for all its services in drafting and valuing the Note in 1994 and 1995. See Stoddart Decl. Ex. 1, App. at 4. Part of the total must have compensated Mr. Darivoff for his work on the valuation, but the defendant cannot guess the amount; and Mr. Darivoff is not the only person at Goldman, Sachs who contributed to valuing the Note. See Stoddart Decl. Ex. 11 at 91, App. at 115.

This, however, is more important: Heinz did not present Mr. Darivoff's opinions in a report that satisfies this Court's rules. In such a report, Heinz would have had to disclose "the data or other information considered by the witness in forming the opinions . . . ." RCFC 26(a)(2)(B). Mr. Darivoff derives his opinions to a great extent from Goldman, Sachs's "own proprietary model for valuing convertible bonds." Stoddart Decl. Ex. 8A, App. at 27. That model comprises a number of mathematical formulas developed by Goldman, Sachs and used by its convertible-bond-trading and underwriting professionals. See Stoddart Decl. Ex. 11 at 22-23, App. at 113-14. If Heinz had failed to disclose the model in an expert report, the defendant would have demanded a copy so that its own expert could check it for possible biases and inaccuracies before Mr. Darivoff's deposition. Goldman, Sachs could not have withheld the model if Heinz had designated Mr. Darivoff as an expert witness. Compare RCFC 26(b)(4)(A) (imposing no limits on the deposition of a testifying expert) with RCFC 26(b)(4)(B) (retained expert not designated to testify must disclose knowledge only upon showing of "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means").

The defendant did depose Mr. Darivoff, but only as a fact witness. As a consequence, its trial attorney could neither examine the proprietary convertible-bond valuation model beforehand nor prepare informed questions about its application to the Note. He could not subpoena the model either: this Court will enforce no subpoena that "requires disclosure of a trade secret or other confidential research, development, or commercial information, or [ ] requires disclosure of an unretained expert's opinion . . . ." RCFC 45(c)(3)(B)(i & ii). RCFC's clause 45(c)(3)(B)(ii) "provides appropriate protection for the intellectual property of the non-party witness [like Mr.

Darivoff]; it does not apply to the expert retained by a party [like Mr. Hatton], whose information is subject to the provisions of Rule 26(b)(4) [which provides no protection]." Fed. R. Civ. P. 45(c) advisory committee's note, 1991 amendment. (Federal Rule 45(c) is identical to RCFC 45(c)). By deposing Mr. Hatton, however, the defendant learned nothing about the Goldman, Sachs convertible-note valuation model because Mr. Hatton knows nothing about it–though he adopts its results. See Stoddart Decl. Ex. 10 at 12-15, App. at 60-63.

Heinz has shielded Mr. Darivoff's opinions from effective discovery by declining to designate him as a testifying expert. Nevertheless, Heinz expects Mr. Darivoff to testify about "the value of the convertible Note . . . and other subjects addressed in defendant's deposition of Mr. Darivoff on April 6, 2005." Plaintiff's Witness List at 3. At that deposition, Mr. Darivoff commented on the opinions and reasoning of the defendant's expert. See Stoddart Decl. ¶ 2, App. at 1. At trial, however, Mr. Darivoff may not offer such testimony unless he qualifies as an expert himself because it presupposes "scientific, technical, or other specialized knowledge."

Because Heinz chose not to designate Mr. Darivoff as an expert witness, he becomes a lay witness by default and may testify only as permitted by Federal Rule of Evidence 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

It would violate the rules and it would be fundamentally unfair for Heinz to shield Mr. Darivoff from expert discovery and still benefit from his specialized knowledge under the pretext that he

will testify only about what he did and thought in the past. Rule 701 prevents this sort of maneuver, as the advisory committee note makes clear:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. . . . By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not <u>evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26</u> and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson.

Fed. R. Evid. 701 advisory committee's notes to 2000 amendments (emphasis added, citation omitted).

The defendant could not effectively test the basis of Mr. Darivoff's technical and specialized knowledge–which includes Goldman, Sachs's intellectual property–because Heinz purposely dressed Mr. Darivoff in "lay witness clothing." That clothing has shielded him from the rigors of expert discovery, and he should not be allowed to change it at trial. Accordingly, the defendant asks the Court to bar Mr. Darivoff from offering any testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702, no matter when he may have exercised that knowledge.

III. Conclusion

For the reasons given, the defendant asks the Court for an order that precludes Heinz from offering the following testimony:

A. testimony in which Aiden Hatton adopts the reasoning or conclusions of the Darivoff letter;

B. testimony by Aiden Hatton concerning the value of the Note; and

C. testimony by Philip Darivoff that relies upon scientific, technical, or other specialized knowledge, whenever he may have applied that knowledge–including, but not limited to, testimony supporting his valuation of the Note and comments about the reasoning, opinions, and conclusions of the defendant's expert.

Respectfully submitted,

s/Robert Stoddart
ROBERT STODDART
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Tel.: (202) 307-6445
FAX: (202) 514-9440
E-MAIL: Robert.C.Stoddart@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section

Of Counsel

November 14, 2005