No. 03-2847 T
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

H.J. HEINZ COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION *IN LIMINE*

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
ROBERT STODDART
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

[Electronically filed on December 6, 2005]

## TABLE OF CONTENTS

*Page*

*A.* *Because Philip Darivoff based his valuation of the Note on technical and specialized knowledge–not simply on his perceptions–he could testify about his valuation of the Note only if Heinz had disclosed him as an expert* . . . . . . . . . . . . . . . . . 3

*B.* *Because Heinz prejudiced the defendant by failing to disclose that Philip Darivoff would offer testimony within the scope of Fed. R. Evid. 702, both fairness and RCFC 37(c)(1) require exclusion of that testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*C.* *Aiden Hatton has no opinion of his own about the matters before the Court, has no experience valuing securities, and explains his statements with the sort of subjective and unchallengeable assertions that the Supreme Court has tried to keep out of the judicial system* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

Cases:

*Bank of China, New York Branch, v. NBM LLC,* 359 F.3d 171 (2d Cir. 2004), *cert. dismissed,* 2005 WL 3046848 (Nov. 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 10

*Chen v. Mayflower Transit, Inc.*, 224 F.R.D. 415 (N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cuyahoga Metropolitan Housing Authority v. United States*, 60 Fed. Cl. 481 (2004) . . . . . . . . . 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . 12, 16

*Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 8, 10, 12

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 14

*State v. Brown*, 836 S.W.2d 530 (Tenn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.,* 320 F.3d 1213 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399 (3d Cir 1980) . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*West Tenn. Chapter of Associated Builders & Contractors v. City of Memphis*, 219 F.R.D. 587 (W.D. Tenn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams Enters., Inc., v. Sherman R. Smoot Co.,* 938 F.2d 230 (D.C. Cir. 1991) . . . . . . . . . . . . 6

[Table of Authorities, continued]

*Page*

Miscellaneous:

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Fed. R. Evid. 701 advisory committee's note to 2000 amendments . . . . . . . 2, 4, 6, 7, 8, 9
Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Fed. R. Evid. 702 advisory committee's note to 2000 amendments . . . . . . . . . . . . . . . . . 3
Fed. R. Evid. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Fed. R. Evid. 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
RCFC 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 13
RCFC 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13
RCFC 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2847 T
(Judge Allegra)

H.J. HEINZ COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION *IN LIMINE*

On November 14, 2005, the defendant filed a motion *in limine* (Def. Mot. *in Limine*). On November 28, Heinz filed a document captioned "Plaintiff's Objection to Defendant's Motion in Limine" (Pl. Obj.). The defendant now replies to Heinz's objection.

In its motion *in limine*, the defendant asked this Court to prevent two of Heinz's proffered witnesses from giving testimony based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702. In 1994, Heinz hired one of those witnesses, Philip Darivoff, to value a convertible note (the Note) using technical and specialized knowledge that is unquestionably within the scope of Rule 702. Now Heinz offers Mr. Darivoff as a "percipient witness" to "confirm Plaintiff's contention that the Convertible Note was intended to represent *and did in fact represent"* the value Mr. Darivoff assigned to it (Pl. Obj. at 5, emphasis added)–*i.e.*, Mr. Darivoff will not only establish the historical fact that he valued the Note and assigned it a certain value; he will also state that value and "confirm" that it was correct using his

technical and specialized knowledge, which Heinz no doubt hopes he will demonstrate in the courtroom.

Heinz did not designate Mr. Darivoff as a witness who would be used at trial to present evidence within the scope of Fed. R. Evid. 702, as RCFC 26(a)(2)(A) required early in the case. Thus the defendant had no right or ability to obtain the information Mr. Darivoff considered when he valued the Note. In particular, the defendant could not obtain the "proprietary model for valuing convertible bonds" upon which Mr. Darivoff primarily based the valuation of the Note's equity portion, the only part of the value that is in contention. *See* Def. Mot. *in Limine*, Ex. 8A, App. at 27-28. Even now Heinz offers Mr. Darivoff as a lay witness, the sort of witness who may *not* offer testimony based on "technical or other specialized knowledge" (Fed. R. Evid. 701(c)), especially if the witness was shielded from the forms of discovery permitted by RCFC 26(a)(2) (*see* Fed. R. Evid. 701, advisory committee's note to 2000 amendments).

On the other hand, Heinz offers Aiden Hatton as an expert witness–also to "confirm Plaintiff's contention that the Convertible Note was intended to represent and did in fact represent" the value Mr. Darivoff assigned to it. Mr. Hatton himself assigns no value to the Note: Instead, he opines that Mr. Darivoff's valuation is correct. He bases his opinion upon what Heinz calls his "real world experience" in buying and selling securities. During 42 years of that real-world experience, Mr. Hatton was never once asked his opinion about the value of a security and he never offered such an opinion–which may explain why he adopts Mr. Darivoff's opinion wholesale, with little independent analysis. What analysis he does offer includes assumptions that he admits were arbitrary and that contradict Mr. Darivoff's assumptions, which Mr. Hatton assumes to be correct. Mr. Hatton claims to have derived his assumptions somehow

from his "experience." Nevertheless Heinz offers his testimony under Fed. R. Evid. 702, which bars testimony based on a method that is "simply a subjective, conclusory approach that cannot reasonably be assessed for reliability." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Heinz defends its proffer of these witnesses by citing authority that is either superseded or inapplicable; Heinz ignores authority that is on point.

*A. Because Philip Darivoff based his valuation of the Note on technical and specialized knowledge–not simply on his perceptions–he could testify about his valuation of the Note only if Heinz had disclosed him as an expert.*

Before replying to Heinz's objections, the defendant will restate the relief it requested in its motion *in limine* (*id.* at 16, emphasis added) to demonstrate that it does not seek to bar Mr. Darivoff from testifying about anything he perceived or did–if a layman could have done it–provided that he offers a mere historical narrative, not support for his valuation of the Note:

> For the reasons given, the defendant asks the Court for an order that precludes Heinz from offering the following testimony:
>
> . . . .
>
> C. testimony by Philip Darivoff that relies upon scientific, technical, or other specialized knowledge, whenever he may have applied that knowledge–including, but not limited to, *testimony supporting his valuation of the Note and comments about the reasoning, opinions, and conclusions of the defendant's expert*.

This restatement should make clear that Heinz begins its objections with a red herring: The defendant does not believe (despite Heinz's mischaracterization) "that [Mr. Darivoff] is overqualified and so may testify *only as an expert*." Pl. Obj. at 6 (emphasis added). On the contrary, the defendant insists that Mr. Darivoff may testify *only as a lay witness* because Heinz

failed to designate him as an expert. The advisory committee expressed the difference in this way (Fed. R. Evid 701 advisory committee's note to 2000 amendment) (original emphasis, citation omitted):

> The amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*. Certainly it is possible for the same witness to provide both lay and expert testimony in a single case. . . . The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules.

Because Heinz did not designate Mr. Darivoff as an expert, he may offer no testimony based on technical or specialized knowledge. Heinz, however, offers Mr. Darivoff's testimony, among other reasons: (1) to invoke "Goldman Sachs['s] . . . well-deserved pre-eminent reputation in designing, valuing, underwriting, buying and selling securities;" and (2) to use "Mr. Darivoff's methodology and work product [to] convincingly rebut the testimony of Defendant's expert." Pl. Obj. at 6. In other words, Heinz wants to build part of its case on Mr. Darivoff's technical and specialized knowledge without the inconvenience that Heinz and Goldman, Sachs would have faced after an expert designation. This is exactly the sort of unfair maneuver that Fed. R. Evid. 701 was designed to prevent.

The 2000 amendments added subsection (c) to Rule 701, which now reads as follows (emphasis added):

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, *and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.*

*See generally Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.,* 320 F.3d 1213, 1221-23 (11th Cir. 2003) (history and purpose of the 2000 amendment). In its original form, the amendment lacked the phrase "within the scope of Rule 702." That version would have prohibited any lay testimony based on specialized knowledge, even knowledge a layman could derive from his own observations. In response to objections from the Justice Department, the advisory committee added the extra phrase in order "to clarify that the amendment was not intended to 'prohibit lay witness testimony *on matters of common knowledge* that traditionally ha[d] been the subject of lay opinions." *Id*. at 1223 (emphasis added).

Traditionally, lay opinion testimony was "admissible only to help the jury or the court to understand the facts about which the witness is testifying and *not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events*." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) (emphasis added, citations omitted). The advisory committee intended to incorporate this understanding into the 2000 amendment, as it showed in its note (Fed. R. Evid 701 advisory committee's note to 2000 amendment, *quoting State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)):

> [T]he distinction between lay and expert witness testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field."

Mr. Darivoff valued the Note by a process of reasoning that could be mastered only by specialists in the field, as even Heinz comes close to admitting. *See* Pl. Obj. at 13. His testimony on this subject could only be expert testimony within the scope of Rule 702. He may not give that testimony.

Heinz attempts to bring Mr. Darivoff's testimony within a category of admissible lay testimony–opinions given by a business's officers or employees about the business and based upon observations made during their usual work.[1] Heinz relies upon two types of authority: the superseded and the misapplied. In the former category are cases decided under versions of Fed. R. Evid 701 that did not prohibit lay testimony based on technical or specialized knowledge (all discussed at Pl. Obj. 8-12): *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399 (3d Cir 1980); *Williams Enters., Inc., v. Sherman R. Smoot Co.,* 938 F.2d 230 (D.C. Cir. 1991); and *West Tenn. Chapter of Associated Builders & Contractors v. City of Memphis*, 219 F.R.D. 587 (W.D. Tenn. 2004), which Heinz considers especially "close[] to the case at hand." Pl. Obj. at 10. Despite its 2004 date, *West Tenn. Chapter* applies law developed under the earlier version of Fed. R. Evid. 701, as another court noticed and demonstrated. *See Chen v. Mayflower Transit, Inc.*, 224 F.R.D. 415, 419 (N.D. Ill. 2004).

Heinz misapplies the "business opinion" exception because it ignores the crucial distinction between Mr. Darivoff and the business owners or officers who have been allowed to give opinion testimony as lay witnesses. *See, e.g., Tampa Bay Shipbuilding*, 224 F.3d at 1223 (contractors of shipbuilder–who worked building ships–could testify that the shipbuilder's charges were reasonable). Mr. Darivoff did not develop a layman's opinion about the value of the Note based on observations made while engaged in some other task–as a manufacturer might

---

[1] *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendment: "[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. . . . . Such opinion testimony is admitted not because of experience, training, or specialized knowledge within the realm of an expert, but because of particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis."

develop a layman's opinion about the financial state of his business while running a factory. Mr. Darivoff's very business is to develop opinions based upon technical and specialized knowledge; that is why Heinz hired him. Here is the relevant language from Mr. Darivoff's agreement with Heinz:

> During the term of our engagement, we will provide you with financial advice and assistance in connection with this potential transaction, which may include *performing valuation analyses*, assisting you in structuring the financial aspects of the transaction and other matters as to which you and we may agree during the course of our engagement.

Def. Mot. *in Limine*, Ex. 1, App. at 4 (emphasis added). Heinz can hardly argue that Mr. Darivoff's valuation of the Note was an incidental byproduct of some other business–something that any person would have been able to produce by observing the relevant events.

Heinz finally engages in a *non sequitur*. In *Cuyahoga Metropolitan Housing Authority v. United States*, 60 Fed. Cl. 481 (2004), this Court *prohibited* a lay witness (Morton) from offering an opinion that was based upon technical and specialized knowledge because the proponent had failed to designate Morton as an expert. Heinz concludes that Mr. Darivoff's non-disclosed expert testimony must be admissible because it will differ from Morton's. This would not follow even if the differences were material, but at least one alleged difference is irrelevant: Heinz insists that "unlike Mr. Darivoff, Morton was not involved in the events in controversy. He performed his analysis and arrived at his conclusions for the purpose of supporting the Government's position in the damages phase of the litigation." Pl. Obj. at 13. Mr. Darivoff, on the other hand, valued the Note before this case began.

Under the rule, however, it makes no difference when or why Mr. Darivoff valued the Note. Rule 701(c) prohibits lay witnesses from giving testimony that relies on "scientific,

technical, or other specialized knowledge within the scope of Rule 702" whether the witnesses made their observations before or after the litigation began. *See*, *e.g., Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 n.2 (7th Cir. 2004) (if a doctor testifies about his observations of a patient and his opinions are based on scientific knowledge, he is providing expert testimony "regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation").

Heinz's cited authorities do not apply to the present case. The defendant will offer one that does: In *Bank of China, New York Branch, v. NBM LLC,* 359 F.3d 171 (2d Cir. 2004), *cert. dismissed,* 2005 WL 3046848 (Nov. 15, 2005), the bank had assigned a senior employee, a Mr. Huang, to investigate the defendant's fraudulent activities. At trial he testified at length about his factual findings, but the district court also allowed him to testify to the following: (1) that certain transactions between the defendants did not comport with the business community's understanding of normal, true, trade transactions between a buyer and seller; (2) the concept of a "trust receipt," and how it works in the context of an international commercial transaction; and (3) that it is considered fraud when an importer presents a trust receipt to a bank to obtain a loan knowing that there are no real goods involved. *Id*. at 180. The bank had not designated Mr. Huang as a witness who would provide testimony within the scope of Fed. R. Evid. 702. Over objections, the district court allowed this testimony as a lay witness's opinion admissible under Fed. R. Evid. 701.

The court of appeals reversed, though not solely or primarily on this ground. Its explanation refutes most of the arguments Heinz has made in favor of admitting "lay" testimony that Mr. Darivoff can give only because he has technical and specialized knowledge:

> The admission of [Huang's opinion] testimony pursuant to Rule 701 was error because it was not based entirely on Huang's perceptions; the District Court abused its discretion to the extent it admitted the testimony based on Huang's *experience and specialized knowledge* in international banking. Subsection (c) of Rule 701, which was amended in 2000, explicitly bars the admission of lay opinions that are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). The Advisory Committee explained that the purpose of Rule 701(c) is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note. That is, in part, what happened here.
>
> Testimony admitted pursuant to Rule 701 must be "rationally based on the perception of the witness." Fed. R. Evid. 701(a). . . . Thus, to the extent Huang's testimony was grounded in the investigation he undertook in his role as a Bank of China employee, it was admissible pursuant to Rule 701 of the Federal Rules of Evidence because it was based on his *perceptions*. . . .
>
> However, to the extent Huang's testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was error. . . . Of course, [his] opinions may, nonetheless, have been admissible pursuant to Rule 702 because "[c]ertainly it is possible for the same witness to provide lay and expert testimony in a single case." Fed. R. Evid. 701, advisory committee's note. . . . But before such testimony could have been proffered pursuant to Rule 702, Bank of China was obligated to satisfy the reliability requirements set forth in that Rule, and disclose Huang as an expert pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure.

*Bank of China*, 359 F.3d at 181-82 (emphasis both added and original).

Heinz argues that Mr. Darivoff may testify as a lay witness about how he designed the Note, how he valued it, and why his valuation is correct, because the testimony will be based on his own perceptions. *See* Pl. Obj. at 13. But a layman could neither design the Note, nor value it, nor explain the valuation, however accurate his perceptions may have been. Mr. Darivoff bases his testimony on the specialized knowledge he has gained from his education and his experience in designing and valuing securities. If Heinz wanted to offer such testimony, it

should have designated Mr. Darivoff as a witness who would offer testimony under Fed. R. Evid. 702. The designation would have permitted the defendant to look behind the valuation–to obtain and test the intellectual property that generated it. Failing that, Heinz could have hired another expert to value the Note independently and to explain the new valuation at trial. Instead, Heinz hopes to recycle Mr. Darivoff's opinion twice: once as live testimony from the source, and once funneled without change through Aiden Hatton. Because the defendant has been barred from examining the most important basis of Mr. Darivoff's valuation, the Goldman, Sachs convertible-note valuation model, it would be unfair to admit the valuation either directly or as hearsay.

*B. Because Heinz prejudiced the defendant by failing to disclose that Philip Darivoff would offer testimony within the scope of Fed. R. Evid. 702, both fairness and RCFC 37(c)(1) require exclusion of that testimony.*

Heinz did not retain Philip Darivoff as an expert witness. Heinz was therefore not obliged to produce an expert report, which is required only from "a witness who is retained or specially employed to provide expert testimony in the case . . . ." RCFC 26(a)(2)(B); *see also Bank of China*, 359 F.3d at 182, n.13. Nevertheless, Heinz intends to offer expert testimony through Mr. Darivoff, as the defendant has shown. Heinz, like every other litigant, was obliged before discovery ended to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." RCFC 26(a)(2)(A). Because Heinz made no such disclosure about Mr. Darivoff, the defendant was entitled to assume that he would offer no testimony within the scope of Fed. R. Evid. 702. *See, e.g., Musser,* 356 F.3d at 757. Accordingly, the defendant deposed Mr. Darivoff expecting that

he would offer at trial only historical testimony as a "percipient" witness. That, at least, was how Heinz represented his testimony. *See* Def. Mot. *in Limine*, Ex. 6, App. at 19.

The defendant narrowed its discovery because Heinz failed to designate Mr. Darivoff as a witness who might be used at trial to present evidence under Fed. R. Evid. 702. For example, the defendant's trial attorney began Mr. Darivoff's deposition by setting the limits he felt bound to observe:

> I am going to be asking you questions that I'm going to try to keep of a factual nature, because I know that Heinz has not designated you as their expert witness. But because I'm asking factual questions about a past opinion, it's going to be difficult to keep facts and opinions completely separate.
>
> So I'm going to try to thread the needle as best I can, but I may venture into an opinion now and then.

Pl. Obj., Ex. 1 at 8. The trial attorney naturally tried to learn what he could, but there were boundaries he had to respect, at least in their general outline. For example, the *correctness* of Mr. Darivoff's valuation would not be an issue in his trial testimony if he offered no testimony under Fed. R. Evid 702. Therefore (especially with Goldman, Sachs's own lawyer present) the trial attorney could not risk extensive or detailed questioning about Goldman, Sachs's proprietary convertible-bond-valuation model, which was the main source of Mr. Darivoff's valuation.

Heinz insists that "[t]he Goldman Sachs convertible bond valuation model figured prominently in Mr. Darivoff's deposition," but to demonstrate that prominence Heinz cites all of seven pages from the 98 pages of testimony, and some of the cited pages do not deal with the valuation model. *See* Pl. Obj. at 16 (citing Ex. 1, pages 22-25 and 42-44; page 25 does not concern the model, and on page 42 only two lines concern the model). More importantly, the defendant's trial attorney could not ask Mr. Darivoff to reveal the mathematical formulas that the

model comprises. As a consequence, the defendant's expert could not analyze them, and the defendant cannot effectively rebut any testimony that relies upon them.

Heinz seems to think that Mr. Darivoff's undisclosed expert testimony will not prejudice the defendant because the defendant learned more than enough by deposing him as a lay witness. *See* Pl. Obj. at 15 ("[I]t is difficult to imagine what more Defendant could have learned if Plaintiff had designated Mr. Darivoff as an expert"). But Heinz's imagination is not the test: as the defendant has shown, it would have deposed Mr. Darivoff differently if Heinz had designated him as an expert. In particular, it would have asked for a step-by-step demonstration of how the valuation model produced Mr. Darivoff's valuation of the Note. As the seventh circuit has noted–

> Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. [The defendant] should not be made to assume that each witness disclosed by [Heinz] could be an expert witness at trial. . . . The failure to disclose experts prejudiced [the defendant] because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), retaining rebuttal experts, and holding additional depositions *to retrieve the information not available because of the absence of a report.*

*Musser*, 356 F.3d at 757-58 (emphasis added, citation omitted).

Because Heinz chose not to disclose Mr. Darivoff's expert testimony, the Court should exclude it. *See, e.g., id.* at 758 ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless"). Heinz has no justification for attempting to introduce expert testimony through a non-disclosed expert. It claims to have known that Goldman, Sachs would not permit Mr. Darivoff to testify as an expert, and it had time enough to find another expert witness. *See* Pl. Obj. at 6, 15. Furthermore, Heinz

did not merely fail to designate Mr. Darivoff as a witness who might testify under Fed. R. Evid 702 (as RCFC 26(a)(2)(A) requires); Heinz affirmatively led the defendant to believe that Mr. Darivoff would offer no such testimony. *See* Def. Mot. *in Limine*, Ex. 6, App. at 19. And as the defendant has already shown, the non-disclosure was far from harmless. Therefore, RCFC 37(c)(1) automatically excludes all testimony Mr. Darivoff might offer that is within the scope of Fed. R. Evid. 702–including, but not limited to, his valuation of the Note, his reasons for assigning it that value, and any testimony offered in rebuttal of the defendant's expert.

But in case the Court allows Mr. Darivoff's testimony on these subjects, the defendant is today filing a protective motion for leave to serve a subpoena more than 100 miles from the place of trial. If that protective motion is granted, the defendant will serve Mr. Darivoff with a subpoena *duces tecum*, instructing him to bring to trial all of the formulas that compose the Goldman, Sachs convertible-bond-valuation model, all software needed to run the model, and a print-out of the calculations that produced his valuation of the Note. The defendant will ask its expert to examine the results, and the defendant will ask Mr. Darivoff to explain each step of the calculation on the record. If the defendant has really suffered no prejudice because Heinz failed to disclose Mr. Darivoff as an expert, then all of this testimony should be available and admissible.[2]

The defendant expects that Goldman, Sachs will either move to quash the subpoena or object under RCFC 45(c)(2)(B), thus requiring the defendant to seek the Court's assistance. The

---

[2] The defendant offers this alternative with reluctance because the subpoena might mitigate the prejudice, but cannot cure it. The defendant should not be forced to complete its discovery and trial preparation during the trial, when it will have, under the best circumstances, only hours to examine testimony that may deserve days of careful analysis.

defendant cannot predict the outcome, but the defendant is sure of this: If Mr. Darivoff is permitted to testify about his valuation of the Note, the defendant cannot be prevented from learning exactly how he produced that valuation. And if the defendant cannot learn exactly how Mr. Darivoff produced it, he may not testify about it.

*C. Aiden Hatton has no opinion of his own about the matters before the Court, has no experience valuing securities, and explains his statements with the sort of subjective and unchallengeable assertions that the Supreme Court has tried to keep out of the judicial system.*

Heinz has found a second way to bring Philip Darivoff's work before the Court–as an exhibit to the report of its nominal expert, Aiden Hatton. Mr. Hatton did not value the Note himself. Instead, he stamps his seal of approval onto Mr. Darivoff's valuation and hands it to the Court unchanged. His own non-hearsay contribution consists of the following opinion: The debt portion of the Note was worth from 60% to 90% of *Mr. Darivoff's valuation* on the date of issuance; and the equity portion was worth from 10% to 40% of that valuation. *See* Def. Mot. *in Limine*, Ex. 8, App. at 23.

The defendant does not deny that an expert can produce an admissible opinion even if he relies upon hearsay to produce it. *See* Fed. R. Evid. 703. For example, in *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-63 (9th Cir. 1984), the court of appeals held that a supervising auditor should have been allowed to testify that an employer had underfunded its employees' pension fund even though the auditor based his opinion on inadmissible audits conducted by his staff. Mr. Hatton, however, does not use Mr. Darivoff's work to reason his way toward an independent opinion that the Note was worth $130,506,000 on the date of issuance. He adopts Mr. Darivoff's work wholesale, in these words: "I . . . agree with Goldman's

conclusion that the value of the Note on the date of issuance was approximately $130,506,000 . . . ." Def. Mot. *in Limine*, Ex 8, App. at 22. And Mr. Hatton supports Goldman's valuation by agreeing with Goldman's methods. *Ibid*.

Heinz has cited no case in which a court permitted one expert to introduce another expert's opinion simply by agreeing with it. The defendant ventures a prediction: Heinz will find no such case, no matter how long it searches. This Court should not be the first to approve this pernicious practice: it would make expert opinions impossible to cross-examine. For example, Mr. Darivoff's valuation relies in great part on the Goldman, Sachs convertible-bond-valuation model. It follows that Mr. Hatton's valuation also relies on that model–but the defendant wasted its time when it asked Mr. Hatton to explain the model. He has never seen or heard about the mathematical formulas that it comprises. *See* Def. Mot. *in Limine*, Ex. 10 at 12-15, App. at 60-63.

Even if Mr. Hatton had produced an opinion of his own, he could not rely on Mr. Darivoff's opinion to support it unless he qualified as an expert himself. He relies on his experience, but his experience is void of any attempt to value a security: before Heinz hired him, he was never asked for such an opinion and never produced one. Heinz counters that Mr. Hatton has been buying and selling securities for 42 years, "necessarily valuing the securities in every transaction" (Pl. Obj. at 6), but Heinz also observes that its valuation of the Note and the defendant's differ by only 6.7% (Pl. Obj. at 19). The Court will require a valuation that is finely calibrated, but Mr. Hatton's daily "valuations" are decisions whether to buy or sell securities within whatever trading range a given customer may find acceptable. He does not "necessarily" appraise those securities any more exactly than an experienced shopper appraises groceries. He

might know in general how high a price the market will bear for a commonly-traded instrument and when it is a good value, but the Note was a made-to-order security with unusual features, not traded on any market. To appraise it, the Court cannot rely upon informed guesswork, "gut-feelings," and wide ranges of possible values.

Furthermore, Mr. Hatton's experience leads him to make judgments that are arbitrary, subjective, and unfalsifiable. For example, he "arbitrarily" values the option portion of the Note at from 10% to 40% of the Note's initial value–a range that derives neither from mathematical calculations nor from comparisons with comparable securities nor from any other objective factor that the defendant could use either to verify it or to disprove it. It derives from nothing but Mr. Hatton's experience. *See* Def. Mot. *in Limine* at 9-11. Of course, Mr. Hatton is the sole judge of his experience, and there can be no appeal from his decision. The defendant cannot show that his statements are right or wrong: at most, the defendant can show that they are inconsistent with Mr. Darivoff's. *See id.* at 11-12.

In the Supreme Court's view, whether a theory can be tested or falsified is "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact . . . ." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593 (1993). The *Daubert* analysis applies to any specialized knowledge, not simply to "science" in its narrow sense. *See Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 147 (1999). Mr. Hatton's "technique" slips past any test. His opinions cannot be admitted as expert testimony.

CONCLUSION

For the reasons given in the defendant's motion *in limine* and in this reply, the defendant asks the Court for an order that precludes Heinz from offering the following testimony: (1) testimony in which Aiden Hatton adopts the reasoning or conclusions of the Darivoff letter, which appears as Exhibit 8A of Def. Mot. *in Limine*, App. at 27; (2) testimony by Aiden Hatton concerning the value of the Note; and (3) testimony by Philip Darivoff that relies upon scientific, technical, or other specialized knowledge, whenever he may have applied that knowledge–including, but not limited to, testimony supporting his valuation of the Note and comments about the reasoning, opinions, and conclusions of the defendant's expert.

Respectfully submitted,

s/Robert Stoddart
ROBERT STODDART
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Tel.: (202) 307-6445
FAX: (202) 514-9440
E-MAIL: Robert.C.Stoddart@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section

Of Counsel

December 6, 2005