**IN THE UNITED STATES COURT**

**OF**

**FEDERAL CLAIMS**

**No. 03-2847 T**
**(Judge Allegra)**

**H.J. HEINZ COMPANY**
**AND SUBSIDIARIES,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**PLAINTIFF'S MEMORANDUM ON**
***COLTEC INDUSTRIES, INC. V. UNITED STATES***
**454 F.3d 1340 (Fed. Cir. 2006)**

Clifton B. Cates
Robert H. Wellen
Attorneys for Plaintiff

Ivins, Phillips & Barker Chartered
1700 Pennsylvania Avenue, N.W.
Sixth Floor
Washington, D.C. 20006
(202) 393-7600

[Electronically filed on August 31, 2006]

## TABLE OF CONTENTS

1. Introduction ........ 1
2. Economic Substance ........ 2
3. Effect on Independent Third Parties ........ 6
4. Impact on Defendant's Argument That Heinz Was the Real Purchaser of the Heinz Stock ..... 9

## TABLE OF AUTHORITIES

**Internal Revenue Code Provisions**
§162 ........ 5
§183 ........ 5
§212 ........ 5
§243 ........ 2
§302 ........ 2, 7, 8
§304 ........ 2, 10
§351 ........ passim
§482 ........ 6, 7
§1059 ........ 2, 8

**Treasury Regulations**
Treas. Reg. §1.302-2(c) ........ 7
Treas. Reg. §1.1059(e)-1 ........ 8

**Cases**
*ACM Partnership v. Commissioner*, 157 F.3d 231 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999) ........ 3, 5
*American Electric Power Co. Inc. v. United States***,** 326 F.3d 737 (6th Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004) ........ 4
*ASA Investerings Partnership v. Commissioner*, 201 F.3d 505 (D.C. Cir. 2000), *cert. denied*, 531 U.S. 871 (2000) ........ 5
*Ballagh v. United States*, 331 F.2d 874 (Ct. Cl. 1964), *cert. denied*, 379 U.S. 887 (1964) ........ 4
*Basic, Inc. v. United States*, 549 F.2d 740 (Ct. Cl. 1977) ........ 9
*Black & Decker Corp. v. United States*, 436 F.3d 431 (4th Cir. 2006) ........ 7
*Boca Investerings Partnership v. United States*, 314 F.3d 625 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 826 (2003) ........ 5
*Bohrer v. Commissioner*, 945 F.2d 344 (10th Cir. 1991) ........ 4
*Brown v. United States*, 396 F.2d 459 (Ct. Cl. 1968) ........ 4
*Bryant v. Commissioner*, 928 F.2d 745 (6th Cir. 1991) ........ 5
*CM Holdings, Inc.*, *In re*, 301 F.3d 96, 102 (3d Cir. 2002) ........ 4
*Collins v. Commissioner*, 857 F.2d 1383 (9th Cir. 1988) ........ 5
*Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) ........ passim
*Compaq Computer Corp. v. Commissioner*, 277 F.3d 778 (5th Cir. 2001) ........ 2, 6
*Court Holding Co.*, *Commissioner v.*, 324 U.S. 331 (1945) ........ 9
*Culbertson*, *Commissioner v.*, 337 U.S. 733 (1949) ........ 5
*Cumberland Pub. Svc. Co. v. Commissioner*, 338 U.S. 451 (1950) ........ 9, 10
*Davis*, *United States v.*, 397 U.S. 301 (1970) ........ 6-8

*Dow Chemical Co. v. United States*, 435 F.3d 594 (6th Cir. 2006)....................................................4
*Falconwood Corp. v. United States*, 422 F.3d 1339 (Fed. Cir. 2005) ............................................9
*Goldstein v. Commissioner*, 364 F.2d 734 (2d Cir. 1966), *cert. denied*, 385 U.S. 1005 (1967).............................................................................................................................4
*Gregory v. Helvering*, 293 U.S. 465 (1935) ..................................................................................5, 7
*IES Industries, Inc. v. United States*, 253 F.3d 350 (8th Cir. 2001) ..........................................2, 6
*Johnson v. United States*, 11 Cl. Ct. 17 (1986)..........................................................................3, 5
*Knetsch v. United States*, 364 U.S. 361 (1960)...............................................................................4
*Kraft Foods Co. v. Commissioner*, 232 F.2d 118 (2d Cir. 1956).....................................................7
*Moline Properties, Inc. v. Commissioner*, 319 U.S. 436 (1943).......................................................7
*Nassau Lens Co. v. Commissioner*, 308 F.2d 39 (2d Cir. 1962).......................................................7
*Northern Indiana Public Service Co. v. Commissioner*, 115 F.3d 506 (7th Cir. 1997)...................7
*Northern Pacific Railway v. United States*, 378 F.2d 686 (Ct. Cl. 1967).......................................4
*Rose v. Commissioner*, 868 F.2d 851 (6th Cir. 1989)......................................................................5
*Rothschild v. United States*, 407 F.2d 404 (Ct. Cl. 1969)...............................................................4
*TIFD III-E, Inc. v. United States*, 2006 U.S. App. LEXIS 20124, 98 A.F.T.R. 2d 2006-5616 (2d Cir. 2006)...............................................................................................................5
*United Parcel Service of America, Inc. v. Commissioner*, 254 F.3d 1014 (11th Cir. 2001) .......3, 7
*Winn-Dixie Stores Inc. v. Commissioner*, 254 F.3d 1313 (11th Cir. 2001), *cert. denied*, 535 U.S. 986 (2002)..............................................................................................................4

**Revenue Ruling**

Rev. Rul. 55-36, 1955-1 C.B. 340 ...................................................................................................5

**Secondary Source**

J. Bankman, "The Economic Substance Doctrine," 74 S. Cal. L. Rev. 5 (2000-01).......................6

## 1. Introduction

In *Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006), the Federal Circuit examined a purported §351 transaction, which consisted of a transfer of property by a Coltec subsidiary, Garlock, to another subsidiary, Garrison, in exchange for Garrison's issuance of stock to Garlock and its assumption of Garlock's asbestos-related contingent liabilities (the "§351 Transaction"). Coltec claimed that Garlock's basis in the Garrison stock exceeded its value and that, when Garlock sold the stock, it was entitled to a capital loss. The Court held that the §351 Transaction had no economic substance and disallowed the loss.

Like *Coltec*, this case involves a transaction between affiliates that resulted in stock basis greater than value and recognition of a loss on a sale of the stock. But the facts of this case differ from the *Coltec* facts in many important ways: (1) *Coltec* involved a widely-marketed tax shelter, whereas the transactions here were planned by Plaintiff's in-house staff to accomplish ongoing business purposes—to take Heinz stock off the market as part of a long-standing corporate stock purchase program and to demonstrate HCC's substance for state tax purposes; (2) Garrison had to be revived from dormancy and capitalized to undertake the §351 Transaction, whereas HCC was a $2 billion corporation and needed no new capital; (3) the bulk of Garlock's stock basis came at no cost from a note issued by an affiliate and contributed to Garrison, whereas HCC bought Heinz stock in the market for cash; (4) the Garrison stock was not liquid, and Garlock sold it at a nominal price, with an indemnity against certain losses, to banks seeking business from Coltec, whereas HCC sold Heinz stock to an institutional investor for $7 million with no indemnity; and (5) most important, the §351 Transaction had no profit potential or other business purpose, and no one would have participated in it except to obtain a tax benefit. Here, the transactions had profit potential and other business purposes as well.

The Code provisions applicable to *Coltec* also differ from those applicable here. In *Coltec*, the provisions were ambiguous and in at least one instance "not a model of statutory draftsmanship." 454 F.3d at 1350. Close questions of interpretation had to be resolved. In this case, the provisions (§§243, 302, 304 and 1059) unambiguously and comprehensively set forth their ultimate purpose, with long-standing case law, regulations and rulings filling any gaps.

**2. Economic Substance**

In *Coltec*, the Court established five principles for deciding economic substance cases: (1) to be respected, a transaction must have economic substance; (2) the taxpayer has the burden of proving economic substance; (3) "the economic substance of a transaction must be viewed objectively rather than subjectively," *i.e.*, there must be an objectively reasonable business benefit from the transaction; (4) "the transaction to be analyzed is the one that gave rise to the alleged tax benefit;" and (5) "arrangements with subsidiaries that do not affect the economic interest of independent third parties deserve particularly close scrutiny." 454 F.3d at 1355-1357.

The Court identified the §351 Transaction as the one "that gave rise to the alleged tax benefit." Thus, even though other events occurred as part of the same plan, the Court held that the §351 Transaction required economic substance on its own. The focus of this memorandum is the economic substance of the redemption of Heinz stock from HCC as a separate transaction.[1]

In testing for economic substance, the Court focused on whether there was an objectively reasonable business purpose. Profit potential is one business purpose that can satisfy the economic substance test.[2] If profit potential cannot be shown, another meaningful business

[1] In this case, three transactions were necessary to the tax benefit at issue: HCC's market purchases of stock, Heinz's redemption of stock from HCC and HCC's sale of stock to AT&T. Based on *Coltec*, each transaction could be tested separately for economic substance. There can be no question, however, that HCC's stock purchases and stock sale pass the economic substance test, because both were arm's-length transactions between unrelated parties.

[2] *See, e.g.*, *IES Industries, Inc. v. United States*, 253 F.3d 350 (8th Cir. 2001); *Compaq Computer Corp. v.*
Footnote continued on next page.

benefit will suffice, but only if the prospect of obtaining that benefit is objectively reasonable. If the transaction has neither profit potential nor the prospect of another business benefit (in either case, objectively reasonable), the transaction is disregarded for tax purposes.[3]

The Court held that the §351 Transaction flunked the objective business purpose test. It had no profit potential for Garlock (the party seeking the tax benefit) because Garrison's assumption of liability for Garlock's asbestos claims did not affect the claimants' rights. Thus, if the costs incurred by Garrison to satisfy the claims and pay expenses turned out to be more than the $389 million transferred to Garrison (the $375 million note transferred by Garlock and $14 million cash by Coltec), Garrison would run out of funds, and Garlock would remain liable for the excess. If such costs turned out to be less than $389 million, however, Garlock would forfeit the cost saving to Garrison.[4] In effect, Garlock purchased $389 million of insurance from Garrison for $389 million (including $14 million from Coltec). If Garrison had had other resources to back up its ostensibly open-ended obligations, Garlock would have had a chance to profit.[5] As it was, however, the §351 Transaction was a sure loser for Garlock. The taxpayer did not even argue that there was profit potential.

To justify the §351 Transaction, Coltec offered two other alleged benefits, but the Court

---

*Commissioner*, 277 F.3d 778 (5th Cir. 2001); *Johnson v. United States*, 11 Cl. Ct. 17 (1986). One simple illustration of this principle is a purchase and sale of stock by a corporation to make money but with no other connection to its business. There can be little doubt that such transactions would be recognized for tax purposes notwithstanding the absence of any additional business purpose.

[3] A transaction also could be disregarded because it has no economic effect on the taxpayer. For example, an otherwise economically consequential investment can be nullified if the taxpayer is fully hedged and so can neither profit nor lose. *See, e.g.*, *ACM Partnership v. Commissioner*, 157 F.3d 231 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999).

[4] In this situation, Garrison would come out ahead, but this type of "profit potential" could not imbue the §351 Transaction with economic substance, because the only assets Garrison had to satisfy the obligations it assumed from Garlock came from Garlock and Coltec in the very transactions at issue.

[5] *United Parcel Service of America, Inc. v. Commissioner*, 254 F.3d 1014 (11th Cir. 2001) is an example of such a situation. There, UPS arranged insurance for lost or damaged shipments with an unrelated, deep-pocket insurance company, but a UPS affiliate bore the ultimate risk through reinsurance. The Court upheld the arrangement.

rejected both. The Court held that one of these benefits (claims management by Garrison) had nothing to do with the §351 Transaction, because Garrison could have managed the claims without assuming liability for them, and that the prospect of obtaining the other benefit (preventing asbestos claimants from piercing the corporate veil to assert claims against Coltec) was objectively unreasonable, despite the belief of Coltec management.[6]

The bottom line was that the §351 Transaction produced no business benefit whatever. Like a transaction in which a taxpayer invests borrowed funds at a return lower than the borrowing rate, no one would have entered into the §351 Transaction but for the tax benefit. In rejecting such a transaction, the Court followed established law.[7]

In contrast to the §351 Transaction, the redemption here possessed significant profit potential for HCC, the party claiming the tax benefit. By exchanging Heinz stock for the convertible note, HCC acquired downside protection for the value of its investment, ensured a minimum 6% annual return for seven years, and retained unlimited upside potential if Heinz stock appreciated significantly—as it did.[8] Profiting from the redemption was HCC's business purpose for participating in it.

---

[6] In dismissing this alleged business purpose, the Court made nothing of the fact that any benefit of veil-piercing protection would inure to Coltec, not to Garlock (the party seeking the tax benefit). 454 F.3d at 1359. Thus, *Coltec* implicitly answers Defendant's argument, based on *Northern Pacific Railway v. United States*, 378 F.2d 686 (Ct. Cl. 1967) (D. Init. Br. 43), that business benefits to Heinz, *viz.* taking stock off the market, should not be considered as a business purpose for HCC's stock purchases.

[7] *Knetsch v. United States*, 364 U.S. 361 (1960); *Rothschild v. United States*, 407 F.2d 404 (Ct Cl. 1969); *Brown v. United States*, 396 F.2d 459 (Ct. Cl. 1968) (and numerous cases cited therein at 462-63); *Goldstein v. Commissioner*, 364 F.2d 734 (2d Cir. 1966), *cert. denied*, 385 U.S. 1005 (1967); *Ballagh v. United States*, 331 F.2d 874 (Ct. Cl.), *cert. denied*, 379 U.S. 887 (1964). *See also Dow Chemical Co. v. United States*, 435 F.3d 594 (6th Cir. 2006) (corporate-owned life insurance); *American Electric Power Co. Inc. v. United States*, 326 F.3d 737 (6th Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004) (same); *In re CM Holdings, Inc.*, 301 F.3d 96 (3d Cir. 2002) (same); *Winn-Dixie Stores, Inc. v. Commissioner*, 254 F.3d 1313 (11th Cir. 2001), *cert. denied*, 535 U.S. 986 (2002) (same); *Bohrer v. Commissioner*, 945 F.2d 344 (10th Cir. 1991) (straddle options) (and numerous cases cited therein at 347).

[8] As HCC's counterparty, Heinz also had profit potential. Heinz did not have to pay dividends on the redeemed stock for at least three years. (Heinz had no obligation to pay interest in cash until the note matured either.) In addition, Heinz could use the redeemed stock to satisfy exercises of stock options, as acquisition currency or for other purposes.

Profit potential is not always enough. For certain transactions, the Code imposes other tests based on intent or motivation. As examples, under §162, §183 and §212, expenditures by individuals are deductible only if business or investment intent is shown;[9] a partnership is respected only if the partners intend to join together to conduct a business;[10] and, as the Supreme Court held in *Gregory v. Helvering*, 293 U.S. 465 (1935), a "plan of reorganization" requires a purpose to continue the conduct of a business in modified corporate form.[11]

Plaintiff surmises that the Federal Circuit was referring to these types of transactions when it stated that the economic substance doctrine "may well also apply if the taxpayer's sole subjective motivation is tax avoidance." 454 F.3d at 1355. As so interpreted, this dictum is consistent with the principle, also stated in *Coltec,* that the economic substance doctrine "represents a judicial effort to enforce the statutory purpose of the tax code." 454 F.3d at 1353. If it were interpreted as requiring a non-tax motivation for every transaction, the *Coltec* dictum would be inconsistent with long-standing case law. *See* P. Init. Br. 29-33.[12]

---

9 *Bryant v. Commissioner*, 928 F.2d 745 (6th Cir. 1991); *Rose v. Commissioner*, 868 F.2d 851 (6th Cir. 1989); *Collins v. Commissioner*, 857 F.2d 1383 (9th Cir. 1988); *Johnson v. United States*, 11 Cl. Ct. 17 (1986).

10 *Commissioner v. Culbertson*, 337 U.S. 733 (1949). In support of its argument that HCC's stock purchases should be attributed to Heinz, Defendant cites *Boca Investerings Partnership v. United States*, 314 F.3d 625 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 826 (2003), and *ASA Investerings Partnership v. Commissioner*, 201 F.3d 505 (D.C. Cir. 2000), *cert. denied,* 531 U.S. 871 (2000). D. Init. Br. 30; D. Reply Br. 13-15. While the opinions contain broad business purpose language, the issue for decision in both cases was the validity of the partnerships. Finding no intent under *Culbertson*, the District of Columbia Circuit disregarded both partnerships. *See also TIFD III-E, Inc. v. United States*, 2006 U.S. App. LEXIS 20124, 98 A.F.T.R. 2d 2006-5616 (2d Cir. 2006), a recent case also decided on the basis of *Culbertson*. These cases are analogous to *Gregory* when it comes to partnership formations. They have no bearing on redemptions.

11 The §351 Transaction itself may fall into this category, because §351 transactions are akin to the corporate reorganizations addressed in *Gregory v. Helvering*, *supra*. *See* Rev. Rul. 55-36, 1955-1 C.B. 340 (*Gregory* cited in analyzing transaction under predecessor of §351).

12 In *ACM Partnership v. Commissioner*, 157 F.3d at 248, n. 31, the Third Circuit stated:

> While it is clear that a transaction such as ACM's that has neither objective non-tax economic effects nor subjective non-tax purposes constitutes an economic sham whose tax consequences must be disregarded, and equally clear that a transaction that has both objective non-tax economic significance and subjective non-tax purposes constitutes an economically substantive transaction whose tax consequences must be respected, *it is also well established that where a transaction objectively affects the taxpayer's net*

Footnote continued on next page.

This case involves a redemption taxed as a dividend. In that field, the Supreme Court has held, in *United States v. Davis*, 397 U.S. 301 (1970), that subjective factors such as business purpose and tax-avoidance motive are not relevant. *Davis* does not change the fundamental rule that transactions must have economic substance—economic effect and reasonable profit potential or other business benefit. *Davis* does establish, however, that for a redemption there is no additional intent requirement.

**3. Effect on Independent Third Parties**

*Coltec* analyzed the effect of the disputed §351 Transaction on independent third parties, because one of the two business purposes alleged by the taxpayer was protection of Coltec against veil-piercing lawsuits by third-party asbestos claimants. Indeed, it was these liabilities that created the tax loss at issue. Applying "particularly close scrutiny,"[13] the Court concluded that this purpose was objectively unreasonable, because Garlock's assumption of the liabilities had no effect on the claimants' ability to pursue Coltec. This conclusion was determinative, because absence of effect on these outsiders meant no business purpose for the §351 Transaction.

By contrast, the redemption here withstands even the closest scrutiny. It was a real transaction, not hedged or otherwise offset; it was conducted on arm's-length terms determined with expert assistance from Goldman Sachs; it affected HCC's financial position; and it had substantial profit potential.

---

*economic position, legal relations, or non-tax business interests, it will not be disregarded merely because it was motivated by tax considerations.* (Citations omitted; emphasis added.)

Plaintiff has found no case in which, without specific statutory direction, a transaction with profit potential was disregarded because it lacked some other business purpose or had too much tax avoidance purpose. *See* J. Bankman, "The Economic Substance Doctrine," 74 S. Cal. L. Rev. 5, 23 (2000-01): ". . . no tax shelter case has yet involved any positive return, once transaction costs are taken into account." (Footnote omitted.) (This article pre-dates *IES* and *Compaq*, *supra*, upholding transactions on the precise ground that they had profit potential.)

[13] The Federal Circuit did not define "particularly close scrutiny." Presumably, it means an inquiry to ensure that a transaction is real, that it is not offset economically by another transaction and that it is conducted on arm's-length terms. Close scrutiny of parent-subsidiary transactions is nothing new in the tax law. *See*, *e.g.*, §482.

The only aspect of the redemption that could raise any question about its economic substance is that it took place between parent and subsidiary. To disregard a transaction for this reason, however, would be inconsistent with overwhelming authority, including *Moline Properties, Inc. v. Commissioner*, 319 U.S. 436 (1943), and its progeny,[14] and the consolidated return regulations. *See* P. Init. Br. 31-33.[15] In addition, if a transaction could be disregarded just because it is between related parties, §482 would be rendered largely superfluous.

To disregard a *redemption* because it occurred between parent and subsidiary would be especially inappropriate, because it would do violence to the very statutory purpose that the economic substance doctrine is supposed to enforce.[16] For redemptions, the statutory purpose is clear from §302. The §302 regime governs every redemption (whether it benefits the fisc or the taxpayer), including redemptions that have no effect on outsiders. Indeed, the core purpose of §302 is to tax as dividends redemptions that do not affect outsiders, even though they are sales in form. In Treas. Reg. §1.302-2(c) *Example (1)*, a key regulation in this case, a corporation redeemed stock from its sole shareholder—a transaction that cannot affect any outside party. Notwithstanding this fact, indeed, because of it, the redemption was taxed as a dividend, and the basis of the redeemed stock was transferred to the shareholder's remaining stock. *Davis* and Treas. Reg. §1.302-2(c) *Example (2)* both require the same result where the only other person

---

[14] Defendant argues that HCC's existence can be respected under *Moline* but its role in the transactions nonetheless disregarded. D. Reply Br. 7-8. *Black & Decker Corp. v. United States*, 436 F.3d 431 (4th Cir. 2006), involves a similar distinction. "*Moline* is not implicated, however, by the IRS's allegation that under the objective prong of the sham transaction test there was no reasonable profit opportunity. . ." 436 F.3d at 442. As discussed above, the redemption here presented a "reasonable profit opportunity," and so the quoted statement in *Black & Decker* is not apposite. More fundamentally, since the only reason for disregarding the redemption would be HCC's relationship with Heinz, disregarding the redemption would be tantamount to disregarding HCC's existence as a separate entity.

[15] Other such authorities include *Kraft Foods Co. v. Commissioner*, 232 F.2d 118 (2d Cir. 1956), *Northern Indiana Public Service Co. v. Commissioner*, 115 F.3d 506 (7th Cir. 1997), and *United Parcel Service of America*, *supra*.

[16] As the Court in *Coltec* stated: "The economic substance doctrine represents a judicial effort to enforce the statutory purpose of the tax code." 454 F.3d at 1353. The Court's analysis is consistent with *Gregory v. Helvering*, *supra*, especially as interpreted in *Nassau Lens Co. v. Commissioner*, 308 F.2d 39 (2d Cir. 1962). *See* P. Init. Br. 29.

affected was the redeemed shareholder's spouse. In addition, several cases and rulings establish that subsidiaries owning parent stock are treated like other stockholders, and that redemptions of such stock are treated like other redemptions. *See* P. Init. Br. 14-19, especially n. 17.

Under the general rule of §1059(e)(1), a non pro-rata redemption, if taxed as a dividend to a corporate shareholder, reduces the redeemed shareholder's basis in its remaining stock. This is a clear statement of legislative purpose. However, in §1059(e)(2), another key provision in this case, Congress stated the equally clear legislative purpose that a redemption taxed as a "qualifying dividend" was not to reduce stock basis.[17] The Code makes this benefit available only for redemptions between close affiliates like Heinz and HCC. To disregard a redemption on account of that same affiliation would deprive the taxpayer of the precise benefit Congress made available exclusively to such affiliated taxpayers.

Section 1059(e)(2) is a bright-line rule that leaves no room for ad hocery. After the transactions at issue, Treasury adopted Treas. Reg. §1.1059(e)-1, which requires stock basis reduction in all non pro rata redemptions taxed to corporate shareholders as dividends. This regulation reversed §1059(e)(2) but substituted one bright-line test for another.

The statutory purpose of §§302 and 1059(e) is clear, including Congress's judgment that in this area bright line rules govern, and individual facts and circumstances do not matter. Both the Supreme Court and Treasury concur in this judgment. The redemption resulted in a "qualifying dividend" to HCC, and it was a real transaction with profit potential that satisfied the economic substance requirement. Under *Davis* and §1059(e)(2), examination of other facts and circumstances is inappropriate.

[17] In adopting and amending §1059, and §1059(e) in particular, Congress carefully crafted provisions to prevent specific abuses while not imposing more triple tax on corporate income than necessary. *See* P. Init. Br. 20-25.

**4. Impact on Defendant's Argument That Heinz Was the Real Purchaser of the Heinz Stock**

*Coltec*'s definition of economic substance bears directly on Defendant's argument that the redemption was a sham. *Coltec* does not address Defendant's other principal argument—that Heinz, not HCC, should be viewed as having purchased the stock. In support of this recast, Defendant relies on the step transaction doctrine (and related theories).[18] D. Reply Br. 5-8. However labeled or presented, though, this argument is essentially a substance-over-form argument based on *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945).[19]

If there were no limit on the government's ability to assert substance-over-form, every Code provision, no matter how explicit or comprehensive, could be nullified.[20] In *Court Holding Co.* situations, the Supreme Court has defined the limit in *Cumberland Public Service Co. v. Commissioner*, 338 U.S. 451 (1950). There, based on facts found by the Tax Court, the Court held that shareholders who received assets in a corporate liquidation and sold them by pre-arrangement were the real sellers. The sale could not be reattributed to the corporation, even though the parties' sole purpose for structuring the transaction as they did was tax-avoidance.[21]

---

[18] For the reasons set forth in pages 21-24 of Plaintiff's reply brief, the step transaction doctrine cannot apply here.

[19] The Court cited *Court Holding Co.* in *Coltec*. 454 F.3d at 1352, 1360. In *Falconwood Corp. v. United States*, 422 F.3d 1339 (Fed. Cir. 2005), the most recent pronouncement by the Federal Circuit on the step transaction doctrine, the question was whether to recognize an intermediate, transitory step in a multi-step transaction. In *Court Holding Co.*, however, the question was which taxpayer was the real actor.

[20] At closing argument, the Court expressed its concern over this "chicken and egg" problem. Tr. 65-67.

[21] In support of its argument that Heinz was the real purchaser of the stock, Defendant cites *Basic, Inc. v. United States*, 549 F.2d 740 (Ct. Cl. 1977), also cited in *Coltec.* 454 F.3d at 1352, 1355-56. In *Basic*, a subsidiary distributed the stock of a lower-tier subsidiary to its corporate parent, which then promptly and by prior arrangement sold both the distributed stock and the stock of the distributing subsidiary. The Court of Claims disregarded the distribution for two alternative reasons: (a) the distribution lacked business purpose, and (b) under *Court Holding Co.*, the distributing subsidiary was the real seller of the distributed stock. *Basic* is inapposite here on both counts: (a) unlike the unilateral distribution in *Basic,* HCC's stock purchases were purchases and sales that had profit potential and accomplished substantial business purposes; and (b) as discussed below, the transactions here fit squarely on the *Cumberland* side of the *Court Holding Co.*/*Cumberland* divide.

Here there can be no question about who did what. HCC, not Heinz, purchased stock directly from the public using its own funds and funds it borrowed on the strength of its own credit. Furthermore, HCC reasonably expected to profit (and did profit) from its investments in Heinz. HCC's stock purchases also accomplished the business purposes of taking Heinz stock off the market and demonstrating HCC's substance for state tax purposes.

Since HCC's stock purchases were real under *Cumberland*, §304 governs HCC's stock purchases, and Defendant's argument that Heinz was the real purchaser cannot be accepted. Since the redemption of stock by Heinz from HCC was real under *Coltec*, the comprehensive statutory scheme governing stock redemptions dictates the outcome of this case.

Respectfully submitted,

s/ Clifton B. Cates

Clifton B. Cates
Attorney for Plaintiff

1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 393-7600

Date: August 31, 2006

Of Counsel:

Ivins, Phillips & Barker Chartered
1700 Pennsylvania Avenue, N.W.
Sixth Floor
Washington, D.C. 20006
(202) 393-7600 (tel.)
(202) 393-7601 (fax)